UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

COREY WOODLAND,

                Petitioner,

v.                                                                                        Case No. 24-cv-0482-bhl

WARDEN MICHAEL MEISNER,

                Respondent.
_____

**ORDER DENYING § 2254 HABEAS PETITION**
_____

       On May 14, 2018, Petitioner Corey Woodland was charged in Milwaukee County with three counts of armed robbery in connection with a string of robberies that occurred on the morning of May 9, 2018. After a series of delays, some attributable to the COVID-19 pandemic, others to the State, and still others to Woodland himself, the case proceeded to trial on April 5, 2021, and a jury ultimately convicted Woodland on all three counts. After unsuccessfully challenging his convictions in state court, Woodland filed a petition for writ of habeas corpus in this Court under 28 U.S.C. § 2254. (ECF No. 1.) He has also moved for an evidentiary hearing. (ECF No. 15.) Because Woodland has not established that he is entitled to either habeas relief or to an evidentiary hearing, his petition and motion will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

       On May 14, 2018, the State of Wisconsin charged Woodland with three counts of armed robbery, all as a habitual criminal repeater. (ECF No. 9-3 ¶2.) The charges related to the May 9, 2018 robberies of two GameStop stores and an AT&T store. (*Id.*) According to the criminal complaint, a male wearing a gray sweatshirt that was turned inside out, a black T-shirt, and worn-out blue jeans entered each of the stores on the morning of May 9, 2018, carrying a gun wrapped in a plastic bag, and demanded money from the employees. (*Id.*) The suspect was seen leaving

---

[1] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by "clear and convincing evidence." *Id.* The background facts are based on the Wisconsin Court of Appeals' decision affirming Woodland's convictions. (ECF No. 9-3.) Additional procedural facts are taken from the state court records provided by Respondent.

one of the robberies in a Nissan with an Illinois license plate. (*Id.*) Woodland had rented a similar vehicle two days before the robberies. (*Id.*)

Woodland pleaded not guilty and was bound over for trial at a May 22, 2018 preliminary hearing. (*Id.* ¶3.) The Court initially set Woodland's trial for November 26, 2018. (ECF No. 19-19 at 2.) Over the next several years, his trial was delayed for a variety of reasons. The first trial date was adjourned at the State's request because a witness was unavailable and because Woodland had recently retained new counsel. (*Id.* at 3.) The State requested, and Woodland's counsel did not oppose, a second adjournment based on the discovery of a new witness. (ECF No. 19-3 at 2.) A conflict on the trial court's calendar led to a third adjournment. (ECF No. 19-19 at 5.) Although he was represented by counsel, on April 30, 2019, Woodland filed a *pro se* speedy trial demand. (ECF No. 19-4.) A few months later, the case was delayed further when, on August 16, 2019, Woodland's counsel requested, and was granted, substitution of the assigned trial judge, with trial then being rescheduled for December 16, 2019. (ECF No. 19-19 at 5.) Court congestion then led to Woodland's trial being further postponed until April 13, 2020, with Woodland's attorney indicating that his client was "okay with pushing [the trial] out." (ECF No. 19-6 at 5–8.) On April 1, 2020, Woodland's trial was postponed again, this time due to the COVID-19 pandemic. (ECF No. 19-19 at 6.) In early June 2020, Woodland made a formal request for prompt disposition under Wis. Stat. § 971.11, and, at a July 27, 2020 hearing, the trial court noted Woodland's request and set trial for October 26, 2020. (ECF Nos. 19-8 & 19-9.) Court congestion led to a further rescheduling of the trial date to December 14, 2020, this time over Woodland's objection. (ECF No. 19-10 at 6–8.) That date then also fell through, however, after Woodland contracted COVID-19. (ECF No. 19-19 at 7.) In the end, Woodland's trial finally began on April 5, 2021. (*Id.*)

At trial, the State presented testimony from store employees, the investigating officers, and Woodland's probation agent. (ECF No. 9-3 ¶4.) It also introduced surveillance video of the robberies and from a Dollar Tree store where Woodland purchased blue latex gloves like those worn by the suspect in each of the armed robberies. (*Id.*) The jury found Woodland guilty on all three counts of armed robbery, and the court sentenced him to a total of eight years of initial confinement followed by six years of extended supervision, to be served consecutive to any other sentence. (*Id.* ¶5.) Woodland filed a motion for postconviction relief, which the trial court denied without a hearing. (*Id.* ¶¶6–7.) Woodland then appealed and, on October 3, 2023, the Wisconsin Court of Appeals affirmed his convictions in an unpublished decision. (*Id.* at 1–16.) Woodland's

petition for review by the Wisconsin Supreme Court was denied on January 23, 2024. (ECF No. 9-4 at 34.)

On April 22, 2024, Woodland filed a petition for federal habeas review under 28 U.S.C. § 2254. (ECF No. 1.) On August 9, 2024, Woodland filed a motion for an evidentiary hearing and for court-appointed counsel for that hearing.[2] (ECF No. 15.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. To obtain relief under AEDPA, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. § 2254(a)). With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of § 2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of § 2254(d)(1) when the "state court identifies the correct governing legal principle . . . but unreasonably applies it to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either

---

[2] On June 20, 2024, Woodland also filed a motion to compel Respondent to supplement the record with the full state court record. (ECF No. 10.) Respondent agreed to produce all available documents but noted that two of the transcripts Woodland requested were not part of the record on appeal. (ECF No. 12.) Accordingly, the Court granted Woodland's motion except as two those two transcripts. (ECF No. 13.) On August 19, 2024, Woodland filed a motion for reconsideration as to the two transcripts at issue. (ECF No. 17.) Because Woodland has not established that those transcripts exist or were a part of the state court record on appeal, and because they are irrelevant to the Court's analysis in any event, his motion to reconsider is denied.

prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## ANALYSIS

Woodland raises four grounds for relief. In ground one, he contends that his Sixth Amendment right to a speedy trial was violated by the nearly three-year delay before his trial began. (ECF No. 1 at 4–6.) In ground two, Woodland claims that one of his robbery convictions was not supported by sufficient evidence and thus violates due process. (*Id.* at 6–7.) Woodland's third and fourth grounds are for ineffective assistance of his trial counsel based on counsel's alleged failures to object to testimony that Woodland was on probation and to the authenticity of a video from a Dollar Tree showing Woodland purchasing a pair of gloves that matched the description of the gloves worn during the robberies. (*Id.* at 7–9.) The Wisconsin Court of Appeals considered and rejected each of these claims.

## I. The Wisconsin Court of Appeals Reasonably Rejected Woodland's Speedy Trial Claim.

The Sixth Amendment guarantees criminal defendants the right to a speedy trial and that right is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 222–23 (1967). In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court recognized that courts have discretion in controlling their calendars and established a four-factor balancing test for resolving speedy trial claims. In determining whether a defendant's speedy trial rights have been violated, courts must consider: (1) the length of the delay in starting trial; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant. *Id.* at 530.

In considering and rejecting Woodland's speedy trial claim, the Wisconsin Court of Appeals identified and applied the *Barker* factors. (ECF No. 9-3 ¶¶11–17.) The court of appeals

began by addressing the length of the delay, noting that Woodland's trial was adjourned several times and that the State had conceded that a thirty-five-month delay in starting trial was presumptively prejudicial. (*Id.* ¶¶12–13.) The court then turned to the reasons for the delays and concluded that the adjournments were attributable to a variety of reasons, some attributable to the State, some to Woodland, and some to neither party. (*Id.* ¶¶13–14.) In particular, the Court explained that Woodland was responsible for delays resulting from his demanded replacement counsel and his request for a judicial substitution. (*Id.* ¶13.) It noted that neither party was responsible for delays caused by the pandemic. (*Id.* ¶14.) With respect to Woodland's assertion of his speedy trial rights, the court held that Woodland did not make a formal demand for a prompt disposition until June 2020, more than two years after charges were filed and after his trial had already been adjourned multiple times. (*Id.* ¶15.) It noted that Woodland's trial was adjourned only twice following his speedy trial demand, and one adjournment was due to Woodland himself contracting COVID-19. (*Id.* ¶15 n.5.) The court refused to consider Woodland's April 2019 *pro se* demand for a speedy trial, because it was made while he was represented by counsel. (*Id.* ¶15 n.6.) With respect to prejudice, the court noted that Woodland was incarcerated while awaiting trial primarily as a result of a sentence from a prior case and would have remained incarcerated even if his trial had started sooner. (*Id.* ¶16.) Based on *Barker* and the totality of the circumstances, the court of appeals concluded that Woodland's right to a speedy trial was not violated. (*Id.* ¶17.)

Woodland contends that the Wisconsin Court of Appeals unreasonably applied the last three *Barker* factors to the facts of his case. With respect to the reasons for the delay in his trial, Woodland disagrees with the state court's characterization of the delays and argues that the state court unreasonably attributed the majority of the delays to the pandemic. (ECF No. 14 at 17–18.) This does not accurately describe the state court's decision. The court did not conclude that the COVID-19 pandemic was responsible for the majority of the delays; it noted that the delays were attributable to the State, Woodland and to external factors, like the COVID-19 pandemic. (ECF No. 9-3 ¶¶13-14.) There is nothing erroneous about the court's determinations and its analysis of the causes for the delays was entirely reasonable. That Woodland disagrees with the state court's descriptions of the various delays is not a basis for faulting the reasonableness of the state court's balancing of this factor.

As for the third *Barker* factor, Woodland faults the Wisconsin Court of Appeals for refusing to consider his initial *pro se* speedy trial demand. (ECF No. 14 at 18.) He notes that the trial court credited his April 30, 2019 written demand in denying his postconviction motion, (ECF No. 19-18 at 3), and cites *United States v. Cross*, 962 F.3d 892, 899 (7th Cir. 2020), for the proposition that trial courts have discretion to consider *pro se* filings by represented litigants. But, as *Cross* establishes, under federal law, "[a] defendant does not have a right to represent himself when he is also represented by counsel." *Id.* (citing *United States v. Patterson*, 576 F.3d 431, 436 (7th Cir. 2009)). Thus, the state appellate court's refusal to consider Woodland's *pro se* speedy trial demand (made while he was represented by counsel) did not violate any federal right, and that is the sole focus of federal habeas review. *See* 28 U.S.C. § 2254(a). Moreover, as the state court noted, even Woodland's disregarded *pro se* demand was a delayed speedy trial demand, coming nearly a year after proceedings began in his case. (ECF No. 9-3 ¶15.) Woodland has not shown that the state court's analysis of the third factor was an unreasonable application of *Barker*.

With respect to the fourth and final *Barker* factor, prejudice, Woodland argues that the Wisconsin Court of Appeals overlooked evidence in the record establishing that he was prejudiced by the delay. (ECF No. 14 at 18–22.) He points to testimony from an October 20, 2020 hearing in which he told the trial court that the delays were preventing him from seeing his children and participating in prison programming and argues that "three years incarceration in a Covid infested jail without a trial" caused him anxiety and high blood pressure. (*Id.* at 19–21.) Woodland cites to *Smith v. Hooey*, 393 U.S. 374 (1969), a pre-*Barker* decision in which the Supreme Court that a defendant's speedy trial right can be violated even while he is serving a prison sentence imposed by another jurisdiction. (*Id.* at 20.) While Woodland is correct that a criminal defendant may be prejudiced by a long delay even when he is serving another sentence during that delay, *see Barker*, 407 U.S. at 532; *Smith*, 393 U.S. at 378–79, he not shown that the prejudice he claims entitles him to habeas relief. His prejudice arguments are largely underdeveloped and conclusory. And they are just one part of the *Barker* analysis. Given the state court's citation and application of *Barker*, and its fulsome balancing of all four factors, Woodland has not shown that its analysis was unreasonable sufficient to warrant habeas relief.

## II. The Wisconsin Court of Appeals Reasonably Concluded There Was Sufficient Evidence to Convict Woodland of Robbery.

Woodland's second ground for habeas relief is a challenge to the sufficiency of the evidence on one of the robbery counts. The Wisconsin Court of Appeals addressed the merits of this claim by stating the relevant standard:

> [A]n appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

(ECF No. 9-3 at 8 (alterations omitted) (quoting *State v. Poellinger*, 451 N.W.2d 752, 757–58 (Wis. 1990).) While this is the state law standard, it mirrors the controlling United States Supreme Court precedent, *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

Woodland argues that the state court's decision was contrary to clearly established federal law as set forth in *Jackson* and *Coleman v. Johnson*, 566 U.S. 650 (2012). He contends the evidence presented was insufficient to establish several elements of armed robbery. (ECF No. 14 at 23–25.) The record and the state court of appeals' analysis defeat this claim.

Woodland highlights that the State only presented testimony from employees of two of the three stores that were robbed. He also points out that the surveillance video of the third robbery did not establish who the owner of the property taken was, whether the owner consented to the property being taken, or whether the suspect threatened anyone. (*Id.* at 23–24.) The Wisconsin Court of Appeals considered and rejected this argument. (ECF No. 9-3 ¶¶18–24.) It noted that the State introduced surveillance video of the third robbery, which matched almost exactly the circumstances of the other two robberies, along with testimony from employees of the other stores confirming that the suspect appeared to have been holding a gun covered with a plastic bag in his right hand, just like the suspect in the surveillance video at the third store. (*Id.* ¶¶21–22.) It also noted that each of the robberies occurred on the same morning, minutes apart, and the suspect from the surveillance video of the third robbery wore clothing that matched the description of the suspect from the first two robberies. (*Id.* ¶22 & n.7.) And it explained that the Nissan seen driving away from the first robbery was found to have been rented to Woodland, and Woodland was identified

as having purchased blue latex gloves similar to those worn during the robberies. (*Id.* ¶22.) Based on all this evidence, the state court thus determined that the jury could have reasonably concluded beyond a reasonable doubt that Woodland was the individual in the video of the third robbery and had entered the GameStop holding a gun and took money from the cash register without GameStop's consent under the threat of using his gun if the employees did not comply. (*Id.* ¶23.)

Woodland argues the state court's decision was contrary to federal law because the video did not show a gun or that any threats were made, and no witness identified Woodland as perpetrating the third robbery. (ECF No. 14 at 24.) He cites *United States v. Pacente*, 503 F.2d 543, 548 (7th Cir. 1974), and Wisconsin Jury Instruction 484, both of which require that juries consider charges separately. (*Id.* at 24–25.) Woodland also points to a pretrial statement made by the prosecution that the State would not move forward on the third charge if it could not present witnesses from the third robbery. (*Id.* at 25 (citing ECF No. 19-13 at 2–3).) None of these arguments, whether considered separately or together, warrants habeas relief. A pre-trial statement by the prosecution is irrelevant to the sufficiency of the evidence presented at trial. And *Jackson* does not stand for the proposition that the evidence to sustain a conviction requires witness testimony establishing each or any element of the charged crime. To the contrary, the Supreme Court held that the purely circumstantial evidence of the defendant's intent was sufficient to sustain his first-degree murder conviction. 443 U.S. at 324–25. As the state court of appeals concluded, the circumstantial evidence against Woodland was sufficient for the jury to reasonably infer that Woodland committed all three armed robberies. (ECF No. 9-3 ¶22.) And contrary to Woodland's assertion, neither *Pacente* nor the cited jury instruction precluded the jury from considering evidence from the other robberies as circumstantial evidence of his guilt in the third robbery. Woodson has not shown that the state court's conclusion on the sufficiency of the evidence was an unreasonable application of federal law.

### III. Both of Woodland's Ineffective Assistance Claims Depend on State Law Evidentiary Rulings Not Cognizable on Federal Habeas Review.

Woodland's ineffective assistance of counsel claims stem from his trial counsel's failure to object to evidence introduced at trial. First, he argues that counsel was ineffective for failing to object to testimony from Woodland's probation officer that established that he was on probation at the time of the robberies. (ECF No. 14 at 28.) Second, he argues that counsel was ineffective for failing to object to the admission of a surveillance video from a Dollar Tree store that showed

him purchasing gloves immediately prior to the robberies because it was not properly authenticated. (*Id.* at 30–31.) The Wisconsin Court of Appeals rejected both claims, concluding that Woodland's trial counsel was not deficient for failing to object on either issue, because both the probation officer's testimony and the video were admissible evidence. (ECF No. 9-3 ¶¶25–37.)

"The admissibility of evidence is generally a matter of state law." *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994). A federal court may grant habeas relief based on a state court evidentiary ruling only when the ruling violates a specific constitutional guarantee or when the probative value of the admitted evidence was so greatly outweighed by its prejudice to the defendant that its admission denied the defended a fundamentally fair trial. *Id.* Woodland's claims that his counsel was inefficient for failing to object to evidence admitted at his trial necessarily depend on the inadmissibility of that evidence. The Wisconsin Court of Appeals determined that both his probation officer's testimony and the Dollar Tree video were admissible and, therefore, his counsel was not deficient for failing to object to their admission.

This Court can only disturb that ruling if it was so erroneous as to deprive Woodland of a fair trial in violation of due process, or otherwise violated his constitutional rights. In regard to both claims, Woodland cites to federal cases concerning the admissibility of similar evidence, as well as to the Federal Rules of Evidence. (ECF No. 14 at 26–31.) These arguments are misplaced. The admissibility of evidence in his case was not governed by the Federal Rules, but rather by the Wisconsin Rules of Evidence. Likewise, federal cases examining whether evidence was admissible in a federal trial have no relevance to his claims. Woodland does not cite to any federal cases that support a finding that the admission of either his probation officer's testimony or the Dollar Tree video was an error of constitutional magnitude. Woodland cites *Estelle v. Williams*, 425 U.S. 501 (1976), in which the Supreme Court held that a state violates due process when it compels a criminal defendant to stand trial dressed in identifiable prison clothes, and argues that the admitted references to his probation status are analogous. (ECF No. 14 at 26.) But, under AEDPA, a federal court may only grant habeas relief when a state court's decision is contrary to *clearly established* federal law. *See* 28 U.S.C. § 2254(d)(1). Woodland cannot establish entitlement to habeas relief by pointing to substantially different Supreme Court precedent on a separate and distinct issue. Because Woodland's ineffective assistance claims depend on the state

court's evidentiary rulings, he is not entitled to habeas relief.[3] *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.")

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. *See* 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Woodland's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Woodland's Motion for Evidentiary Hearing, ECF No. 15, is **DENIED**.

**IT IS FURTHER ORDERED** that Woodland's Motion to Reconsider, ECF No. 17, is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated at Milwaukee, Wisconsin on March 12, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

[3] The Court will also deny Woodland's motion for an evidentiary hearing on his ineffective assistance claims because his claims challenge the state court's determination of the admissibility of evidence under state law and are, therefore, not cognizable on federal habeas review.